UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LISA NORRIS, | Case No. 1:18-cv-693 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Lisa Norris filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In October 2015, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging a disability onset date of June 5, 2015, due to physical impairments. (Tr. 260-261). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On January 9, 2018, ALJ Martha Gasparovich held a video hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 131-155). On February 7, 2018, the ALJ denied Plaintiff's application in a written

1

decision. (Tr. 110-130). Plaintiff now seeks judicial review of the denial of her application for benefits.

Plaintiff was 45 years old at the time of the administrative hearing. (Tr. 135). She as an associate's degree and has past relevant work as an office manager. She alleges disability since June 2015 due to a combination of impairments, including seizures, dystonia, fatigue and joint pain.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, non-epileptic seizures, psychogenic dystonia, and psychogenic movement disorder. (Tr. 116). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> She is unable to stand and walk in combination for more than four hours in an eight hour day; can sit for an unlimited duration, but requires a sit/stand option at least every 30-45 minutes; can lift no more than 20 pounds occasionally and ten pounds frequently; can occasionally stoop, climb, balance, crouch, squat, crawl, or kneel; must avoid operating vehicles; and must avoid all hazards such as but not limited to open bodies of water, open flames, moving machinery, sharp objects and unprotected heights.

(Tr. 118). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is able to perform her past relevant work as an office manager. Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id*.

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to find fibromyalgia to be a severe impairment; 2) failing to find Sjogren's Syndrome to be a severe impairment; 3) failing to find that Plaintiff met the requirements of Listing 12.07; and 4) improperly weighing the opinion of Dr. Blatman. Upon close analysis, I conclude that none of the asserted errors require reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a

whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . .  The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period,

4

he or she suffered impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's Decision is substantially supported

*1. Step-Two Determination*

Plaintiff argues that the ALJ erred in failing to find her fibromyalgia and Sjogren's syndrome to be severe impairments. Plaintiff's contentions lack merit. For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. *See* 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").

Here, the ALJ found that Plaintiff's impairments of fibromyalgia and Sjogren's syndrome were not medically determinable. In so concluding, the ALJ noted that SSR 12-2p allows for two ways to establish fibromyalgia as a medically determinable impairment: 1) using the 1990 ACR Criteria for the Classification of Fibromyalgia and 2) using the 2010 ACR Preliminary Diagnostic Criteria. The 1990 ACR criteria requires all three of the following: a history of widespread pain for at least three months; at least 11 positive tender points on physical examination; and evidence that other disorders that could cause the symptoms or signs were excluded. (Tr. 116). The 2010 ACR Preliminary Diagnostic Criteria requires all three of the following criteria: a history of widespread pain; repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory

5

problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (SSR 12-2p).  As the ALJ wrote, the primary issue in the instant case is that the evidence did not indicate other disorder or co-occurring conditions were excluded. (Tr. 116).

The ALJ also found that Plaintiff did not have a medically determinable impairment of Sjogren's syndrome. (Tr. 116). Pursuant to the ACR criteria, the diagnosis of Sjogren's syndrome requires at least two of the following three findings; positive serum anti-SSA and/or anti-SSB antibodies or positive rheumatoid factor and antinuclear antibody titer of at least 1:320, ocular staining score of at least three. (Tr. 116). Dr. Delorenzo continued to diagnose the presence of Sjogren syndrome but, he indicated that ineffectiveness of steroids argue against an autoimmune process. (Tr. 3243-64).

In 2015, Dr. Flaspohler, a rheumatologist, wrote that Plaintiff did not have a clear diagnosis and her current issues could have psychological underpinnings, and she encouraged Plaintiff to see a psychologist and/or psychiatrist. (Tr. 1569). In January 2016, Dr. Milligan noted that Plaintiff had a reported history of one positive SSA or SSB but, she did not think Sjogren's was the proper diagnosis for her. (Tr. 116). Dr. Milligan also reported that Plaintiff had previously treated with "a very good rheumatologist Dr. Flaspohler who told her she did not have [S]jogren's and attributed her symptoms to psychological underpinnings". (Tr. 2970).  Dr. Milligan agreed with this opinion, reported that Plaintiff had stopped all of her autoimmune medications, and reported that she had

6

not seen objective evidence that Plaintiff even had dystonic episodes or seizures." (Tr. 2970).

Moreover, errors at Step 2 of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at Step 2. See Maziarz v. Secretary of Health and Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone...." 20 C.F.R. § 404.1545(e).

In this case, the ALJ found several "severe" impairments, including degenerative disc disease, non-epileptic seizures, psychogenic dystonia, and psychogenic movement disorder. (Tr. 116). Even if there was an error, then, the ALJ's failure to consider Plaintiff's fibromyalgia and Sjogren's Syndrome as "severe" at Step 2 of the sequential analysis will not necessarily require reversal or remand. Contrary to Plaintiff's claim, the ALJ also reasonably considered her impairments in combination. (Tr. 116-118).

Accordingly, the undersigned finds that the ALJ adequately considered all of Plaintiff's conditions in determining her RFC and therefore did not err at step-two of the sequential evaluation.

*2. Listing 12.07*

Plaintiff argues next that the ALJ failed to properly weigh the evidence in determining whether the she met social security listing 12.07 due to a somatic symptom or related disorders.

Listing 12.07 provides:

12.07 Somatoform Disorders: Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented by evidence of one of the following:

1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly;

2. Persistent nonorganic disturbance of one of the following:

a. Vision; or
b. Speech; or
c. Hearing; or
d. Use of a limb; or
e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia;) or
f. Sensation (e.g., diminished or heightened).

3. Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;

AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace;
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.07.

Here, the ALJ explicitly mentioned listing 12.07 and explained, however briefly, that the record did not demonstrate the criteria of the listing (Tr. 118).

As the ALJ found, Plaintiff had no limitations in the four broad areas of mental functioning set out in the regulations for evaluating mental disorders in the Listing of Impairments, also known as the "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 117-18). The ALJ discussed each of the "B criteria," determining that Plaintiff had no limitations in understanding, remembering, or applying information; no limitations in interacting with others; no limitations in concentrating, persisting, or maintaining pace; and no limitations in adapting or managing oneself. (Tr. 117). Thus, the evidence of record does not support a finding that Plaintiff's condition satisfied all of the criteria necessary to meet Listing 12.07. As such, the ALJ's decision is substantially supported in this regard.

As the ALJ's decision included an extensive discussion of the medical evidence concerning Plaintiff's mental impairments and indicates that the ALJ expressly considered the applicability of Listing 12.07. Courts have been reluctant to impose a strict articulation standard on ALJs at step three. *See Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985) (minimal articulation required at step three). In sum, substantial evidence supports the ALJ's step three finding, which was also adequately articulated.

*3. Weighing of Opinion Evidence*

Last, Plaintiff argues that the ALJ erred by failing to give controlling weight to the findings of Dr. Blatman. Notably, in November 2017, Dr. Blateman conducted an independent medical examination. (Tr. 122). Dr. Blatman noted that plaintiff

9

complained of pain in both shoulders, elbows, lower back, knees and ankles. She also reported she suffers from seizures at least 3 times a week. He noted that her physical examination revealed limited in forward flexion, normal shoulder range of motion, and normal knee range of motion. Dr. Blatman further noted Plaintiff's "extensive medical history and documentation of these issues spanning the last few years." (Tr. 3266). He then opined that she was "totally disabled from any occupation." (Tr. 3266). In formulating Plaintiff's RFC, the ALJ assigned little weight to Dr. Blatman's opinion because he found it was largely based on Plaintiff's subjective allegations. The ALJ also noted that Dr. Blatman did not discuss the contradictions in the medical records between Plaintiff's history and office records. *Id.*

Pursuant to Agency regulations, a medical opinion is entitled to controlling weight if it is from a treating source and is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). The Sixth Circuit has held that treating physicians' opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3rd 284, 287 (6th Cir. 1994) (citation omitted). In determining the weight of medical source opinions not entitled to controlling weight, an ALJ will evaluate the following factors: the length, nature, and extent of treatment relationship; evidence in support of the opinion; consistency with the record as a whole; and the physician's specialization. 20 C.F.R. § 404.1527(c); see *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Here, the ALJ reasonably rejected Dr. Blatman's findings. Notably, Dr. Blatman's unsupported conclusory opinion that Plaintiff was disabled was not entitled to any significant weight. 20 C.F.R. § 404.1527. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 30-31 (6th Cir. 2009) (The treating physician's opinion "is not entitled to controlling or deferential weight because it is not supported by proportionate objective findings and it lacks the necessary supportability and consistency to entitle it to even deferential weight."); see also 20 C.F.R. § 416.927(c)(3)-(4). Plaintiff argues that Dr. Blatman is the only non-treating source to conduct a physical independent medical examination. However, as noted above, although Dr. Blatman conducted an examination, he reported mostly normal findings and his opinion was based largely on Plaintiff's subjective complaints. *See Anderson,* 195 Fed. Appx. at 370 (An ALJ need not credit a treating physician opinion that is conclusory and unsupported). *See also Warner v. Commissioner of Soc. Sec.,* 375 F.3d 387, 391 (6th Cir.2004) (It is well settled that an ALJ may properly discount a treating physician's opinion based on a claimant's subjective complaints and if unsupported by objective findings).

In light of the foregoing, the ALJ's decision is substantially supported in this regard and should not be disturbed.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LISA NORRIS,

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:18-cv-693

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).